UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE ALFONSO SANCHEZ ALFARO,<br><br>Petitioner,<br><br>v.<br><br>RALPH MATTIVELO, et al.<br><br>Respondents. | Civil Action No. 1:25-cv-11124-ADB |

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondent, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Jose Alfonso Sanchez Alfaro's ("Petitioner") Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition").  Doc. No. 17.  Respondent responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

**INTRODUCTION**

Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") for purpose of effectuating his final order of removal is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution.  Additionally, this Court lacks jurisdiction to interfere with ICE's removal of Petitioner to his home country per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to …

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response to habeas petition under Section 2254 Rules).

execute removal orders." *Compere v. Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress.").

Petitioner is subject to a final order of removal and is detained pursuant to 8 U.S.C. § 1231(a). *See* Declaration of Assistant Field Office Director, Keith Chan ¶ 5, ("Chan Decl."), attached as Exhibit A. Contrary to Petitioner's claims, ICE complied with its statutory and regulatory authority to arrest and detain him because ICE is prepared to effectuate his removal order. *Id.*, ¶ 18. As such, his detention is authorized by statute, and he has no entitlement to release aside from his return to his home country of El Salvador.

Petitioner's claim that his detention violates Due Process is also without merit. The Supreme Court set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In *Zadvydas*, the Supreme Court explained that the "reasonableness" of continued detention under Section 1231(a)(6) should be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." 533 U.S. at 700. The Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701. Petitioner's Due Process challenge to his detention fails because it is premature as he has only been detained for less than two months and he remains detained only because he filed this litigation. *See Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

Finally, Petitioner cannot raise a colorable due process claim as to ICE's revocation of his prior Order of Supervision. ICE properly exercised its broad discretionary authority to revoke Petitioner's prior release pursuant to 8 C.F.R. § 241.4(l)(2) upon a determination by the Field Office Director ("FOD") that "[i]t is appropriate to enforce a removal order … against an alien". Exh. A, ¶ 18. As such, this Court should not order his release, and his Petition must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Immigration History

Petitioner is a native and citizen of El Salvador. *Id.*, ¶ 6. Petitioner was encountered by U.S. Border Patrol in 2005 after entering the United States without inspection. *Id.*, ¶ 7. Petitioner was entered into removal proceedings in 2005 and on April 3, 2006, Petitioner failed to appear at his scheduled hearing in Immigration Court and was therefore ordered removed in absentia to El Salvador. *Id.*, ¶¶ 8-9. ICE arrested Petitioner in 2013 pursuant to its statutory authority under 8 U.S.C. § 1231. *Id.*, ¶ 10. ICE, however, granted Petitioner's request for a stay of removal and released Petitioner pursuant to an Order of Supervision due to the grant of the stay of removal. *Id.*, ¶¶ 11-13. Petitioner filed another stay of removal in 2015 which ICE granted for a one-year period. *Id.*, ¶¶ 14-16.

Petitioner filed motions to reopen his removal order with the Immigration Judge in 2018 and 2021, both motions have been denied. *Id.*, ¶ 16. Petitioner filed an appeal of the denial of his second motion to reopen in 2021 to the Board of Immigration Appeals, such appeal remains pending. *Id.*, ¶ 17.

On April 25, 2025, ICE arrested the Petitioner and revoked his Order of Supervision pursuant to its authority under 8 C.F.R. § 241.4(l)(2). *Id.*, ¶ 18. The ICE Enforcement and

3

Removal Operations ("ERO") acting FOD for Boston, Patricia Hyde, determined that the purpose of Petitioner's prior release had been served and that revocation was appropriate to enforce Petitioner's removal order. *Id.* Additionally, in making the decision to revoke Petitioner's release, FOD Hyde determined that revocation of release was in the public interest to effectuate the removal order. *Id.* ICE conducted an "informal interview" with Petitioner as required by regulation to advise him of the basis for the revocation of his release on April 25, 2025. *Id.*, ¶ 19. ICE also provided Petitioner and his attorney, as required by regulation, with written notice of the reasons for the revocation of his release. *Id.* ICE has the necessary documents to effectuate Petitioner's removal to El Salvador and seeks to enforce Petitioner's removal order as soon as possible. *Id.*

### B. Procedural History

Petitioner filed his original Petition on April 25, 2025. Doc. No. 1. Petitioner asserted that ICE unlawfully detained him without cause because he had complied with the terms of his Order of Supervision. *Id.*, ¶ 13. He contended that his detention violates the Fifth Amendment because he had been "reporting to ICE in accordance with the release requirements" and because he had "been held by ICE in the past with no deportation following." Petitioner asked this Court to bar ICE from removing him from the District of Massachusetts and that the Court order ICE immediately release him. *Id.* at Prayer for Relief.

Respondent filed its Opposition to the original Petition on May 12, 2025. Doc. No. 15. Petitioner filed a motion to amend the original Petition on May 22 and an amended Petition on the same date to name Petitioner's custodian as Respondent. Doc. Nos. 16-17. Petitioner also filed a reply to Respondent's response to the original Petition on May 22. Doc. No. 18. This

Court granted Petitioner's motion to amend on May 30. Doc. No. 19. Respondent therefore files this Opposition to the Amended Petition.

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution. Additionally, this Court lacks jurisdiction to interfere with ICE's effectuation of Petitioner's removal order. As such, this Court must deny the Petition.

### A. Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231

ICE's detention authority stems from 8 U.S.C. § 1231 which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final order alien. If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner's prior order of removal was final in 2006, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as Petitioner was neither admitted nor paroled in the United States upon entry. As such, ICE has statutory authority to detain Petitioner to

effectuate his removal order from the United States and he is not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process.

The Supreme Court, in *Johnson v. Arteaga-Martinez*, answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). The Court answered that question definitively, holding that Section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" … "directs that we answer this question in the negative." *Id.* at 581.

As such, Petitioner's claim that he is entitled to release is foreclosed by statute and Supreme Court precedent.

### B. ICE's Revocation of Release Comports with Regulation and the Constitution.

Petitioner's claim that his arrest and detention violate the Constitution because he abided by the conditions of his Order of Supervision (Doc. No. 17, ¶ 14) and because ICE revoked his Order of Supervision in a manner contrary to the relevant regulations is wholly without merit as ICE exercised its significant discretion in revoking his release in an appropriate manner.

### 1. The Post-Order Custody Regulations Provide for Revocation of Release at ICE's Discretion to Effectuate a Removal Order.

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for an individual released pursuant to an Order of Supervision, ICE issued Post-Order Custody Regulations ("POCR") contained at 8 C.F.R. § 241.4 to set forth mechanisms concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal.

The regulatory provisions concerning revocation of release are contained at 8 C.F.R. § 241.4(l) and provide significant discretion to ICE to revoke release. *See Leybinsky v. U.S.*

*Immigr. & Customs Enf't,* 553 F. App'x 108, 110 (2d Cir. 2014) (Remarking on the "broad discretionary authority the regulation grants ICE" to revoke release."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (Explaining that while the revocation regulation "provides the detainee some opportunity to respond to the reasons for revocation, it provides no other procedural and no meaningful substantive limit on this exercise of discretion ….").

Petitioner is correct that ICE can revoke release when an individual violates conditions of release. *See* 8 C.F.R. § 241.4(l)(1). But, the regulation provides for revocation in additional circumstances such as when ICE's Field Office Director[2] determines in her opinion that "[t]he purposes of release have been served," or when "[i]t is appropriate to enforce a removal order … against an alien," or when "[t]he conduct of the alien, *or any other circumstance,* indicates that release would no longer be appropriate." *Id.* § 241.4(l)(2)(i)-(iv) (emphasis added).

When ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation. *Id.* If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3).

However, ICE is not required to "conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal." 8 C.F.R. § 241.4(g)(4); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335. Further, if ICE determines in its "judgment [that] travel documents can be obtained, or such document is forthcoming, the alien will not be

---

[2] 8 C.F.R. § 241.4(l)(2)'s reference to the authority of a "district director" to revoke release is now understood to apply to an ICE ERO Field Office Director. *See* 8 C.F.R. § 1.2 (Explaining that the term "district director" after March 1, 2003 means "field office director.".

released unless immediate removal is not practicable or in the public interest." 8 C.F.R. § 241.4(g)(3). These regulations apply to aliens who have "filed a motion to reopen immigration proceedings for consideration of relief from removal … unless the motion to reopen is granted." 8 C.F.R. § 241.4(b)(1); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("The fact that petitioner's motion to reopen the removal proceedings remains pending does not lead to a different result" as to ICE's ability to effectuate removal pursuant to Section 1231).

### 2. ICE Complied with the POCR Regulations to Arrest Petitioner.

Here, ICE ERO Boston's acting FOD Patricia Hyde issued Petitioner with a written revocation notice on or about April 25, 2025 explaining that ICE was revoking his release pursuant to 8 C.F.R. § 241.4 as it had determined that Petitioner could be removed from the United States pursuant to his final order of removal. Doc. No. 1-3; Exh. A, ¶ 18. Per the revocation notice, FOD Hyde stated that "ICE has determined the purpose of your release has been served and it is appropriate to enforce the removal order." *Id.* In making this determination, FOD Hyde determined that revocation was in the public interest to effectuate a removal order. Exh. A, ¶ 18. *See Nken v. Holder,* 556 U.S. 418, 435 (2009) (Explaining that "[t]here is always a public interest in prompt execution of removal orders …"); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021) ("the prompt execution of removal orders in a legitimate governmental interest which detention may facilitate).

In revoking release, ICE complied with the regulation that allows revocation when the FOD determines that it "is appropriate to enforce a removal order … against an alien" and when the FOD finds that the "purposes of release have been served." 8 C.F.R. § 241.4(l)(2). As explained by another session of this Court, when ICE "determined that revocation was necessary to initiate [] removal … [n]o further justification was required." *Doe v. Smith*, No. CV 18-

11363-FDS, 2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018). As Chief Judge Saylor explained in *Doe*, the regulation does not require the FOD "to make a formal determination that her revocation was in the public interest[,]" instead, the FOD has "discretion to determine when revocation is appropriate". *Id.* As stated by another court, the regulation provides a "short and straight path for immigrants whom the government is ready and able to remove." *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018). *See also Ferrari v. Wilcox*, No. C19-385-RSM-BAT, 2019 WL 13209736, at *5 (W.D. Wash. Sept. 24, 2019) (Explaining that because ICE had "obtained a travel document[] and scheduled his removal, ICE properly revoked [petitioner's] release …."). Here, ICE has the necessary documents to effectuate Petitioner's removal to El Salvador and is prepared to move forward as soon as possible with releasing Petitioner to his home country. Exh. A, ¶ 20. As such, ICE had ample justification per regulation to revoke release.

ICE also conducted 8 C.F.R. § 241.4(l)'s required "informal interview" with Petitioner on April 25, 2025 to explain the basis for his revocation and served him with a written notice of revocation soon after his arrest. *Id.*, ¶ 19. In his Amended Petition, Petitioner does not allege that ICE failed to conduct the required informal interview with him. Instead, he alleges that the written notice of revocation ICE provided him "did not address the necessary revocation elements" required by Section 241.4. Doc. No. 17, COUNT TWO, ¶ 5. But, even if Petitioner could contest that the informal interview was not as fulsome as he believes appropriate, as explained by this Court, there "is thus no apparent reason why a violation of the regulation, even assuming it occurred, should result in release." *Doe*, 2018 WL 4696748, at * 9. This is because there is not "a situation where a prompt interview might have led to [his] immediate release—for example, a case of mistaken identity." *Id.* Here, ICE provided the required written notice to

9

Petitioner and his counsel and conducted the required informal interview to advise that ICE was revoking his release in order to effectuate his final order of removal to El Salvador. The regulation does not require more.

To the extent Petitioner believes ICE should have provided him with advance notice of its intent to revoke his release, such belief is not grounded in statute, regulation or the Constitution. ICE is not required to provide advance notice of its intent to revoke release for the obvious reason that could encourage flight or increase law enforcement safety concerns. *Doe*, 2018 WL 4696748, at * 7 (Explaining that the "regulation does not require that a petitioner or her counsel be given 30 days' notice prior to the initial informal interview."); *Reyes v. King,* No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *10 (S.D.N.Y. Aug. 20, 2021) (Explaining that "the Due Process Clause of the Fifth Amendment does not entitle [p]etitioner to such a [pre-detetion] hearing at this specified time, and [p]etitioner cites no authority within this Circuit that counsels otherwise."); *Moran v. U.S. Dep't of Homeland Sec*., No. EDCV2000696DOCJDE, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (Expressing skepticism about "the source of any due process right to advance notice of revocation of supervised release or other removal-related detention."); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018) (Finding no "due process right to not be snatched off the street without warning" when ICE revoked discretionary parole and returned individual to custody.).

Courts routinely conclude that compliance with the POCR regulations protect individual's Constitutional rights while detained. *See e.g., Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive

the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (Collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

Because Petitioner does not allege that ICE violated any specific procedures under the applicable regulation, his petition should be denied.  *See, e.g.*, *Doe*, 2018 WL 4696748, at *7 (dismissing habeas claim where "there was no regulatory violation" in connection with custody reviews); *Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), *report and recommendation adopted,* No. CV 24-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025) (Finding no due process violation "[a]bsent an indication that ICE failed to comply with its regulatory obligations in some more specific way".).

To the extent Petitioner seeks this Court to conduct its own custody review or to analyze ICE's custody determinations, as explained by another court, "[s]uch arguments are not proper here.  It is ICE's province under 8 U.S.C. 1231(a)(6) to determine whether a removable alien such as [petitioner] should be detained past the 90-day removal period" … as Congress has "eliminated judicial review of immigration-related matters for which ICE [] has discretion—such as flight-risk determinations." *Xie Deng Chen v. Barr*, No. 1:20-CV-00007-SL, 2021 WL 2255873, at *4 (N.D. Ohio Feb. 5, 2021).  *See also Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (District court lacked jurisdiction over petitioner's "challenge to his short re-detention for removal" concerning whether his release was revoked in accordance with regulation because of 8 U.S.C. § 1252(g)); *Portillo*, 2022 WL 826941, at * 7 n. 9 (Explaining that the court lacks jurisdiction to review ICE's POCR decisions).

As such, Petitioner's claim that ICE's arrest and detention of Petitioner violated statute and regulation fails as ICE properly exercised its ample discretion in revoking Petitioner's release.

### C. Petitioner's Statutorily Authorized Detention is Constitutional.

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause because he had "been held by ICE in the past with no deportation following" is similarly without merit as his detention comports with the framework set forth by the Supreme Court in *Zadvydas* through which a due process challenge to post-final order detention must be analyzed. Petitioner does not face indefinite detention and will be released to El Salvador in the immediate future as ICE is in possession of the necessary travel documents to return him to his home country.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (Explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The

12

*Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner's Due Process challenge fails under his present circumstances. Petitioner seems to argue that because ICE previously released him on an Order of Supervision, his current detention violates the Constitution. Doc. No. 17, ¶ 14, COUNT ONE, ¶ 2. Petitioner is mistaken, however.

First, a prior release pursuant to an Order of Supervision does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible. As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado,* 271 F. Supp. 3d at 335. Stated

similarly, a prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention." *Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019).

Additionally, Petitioner's due process claim fails because any *Zadvydas* challenge cannot be raised until Petitioner has been detained for six-months in post-final order custody and he has been detained for less than one month. *See Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*.).

Finally, Petitioner does not face indefinite detention. ICE is in possession of the necessary travel documents to effectuate Petitioner's release from custody and return to his home country as soon as possible. Petitioner's detention is fully permissible and does not violate the Fifth Amendment's Due Process Clause and therefore his claim for release must be rejected.

### D. This Court Lacks Jurisdiction to Interfere with Petitioner's Removal from the United States.

To the extent Petitioner seeks this Court to enter an order staying ICE's effectuation of Petitioner's removal order, this Court is without jurisdiction to offer such relief as 8 U.S.C. § 1252(g) precludes a district court from staying orders of removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added).

This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.* Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf''t,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe,* 2018 WL 4696748, at *3 (same); *Compere*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

The fact that Petitioner is seeking a stay of removal while the BIA adjudicates the appeal of the IJ's denial of a motion to reopen does not change the analysis; Section 1252(g) still bars jurisdiction for this Court to order a stay. As recognized by this Court, even if the challenge is framed as a violation of due process for failure to stay removal pending a motion to reopen, "this does not change the jurisdiction stripping analysis under Section 1252(g)." *Lopez Lopez*, 2020 WL 419598, at *4. Circuit courts recognize that even with a pending motion to reopen, Section 1252(g) bars a court from entering a stay of removal. *See Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (Finding Section 1252(g) precludes review of a claim to enjoin the government from removing petitioner "pending resolution of his motion to reopen".); *Tazu*, 975 F.3d at 297 (Explaining that ICE "may thus decide to execute [an alien's] valid removal order when [it] choses. The statute shields that prosecutorial discretion from judicial review apart from a petition for review.") *See also Ahmed v. Barr, No. 20-CV-395 (JLS),* 2020 WL 2395694, at *2 (W.D.N.Y. May 12, 2020) (collecting cases where district courts declined to order stays of removal pending BIA decisions on motions to reopen or reconsider).

While the filing of a motion to reopen generally does not stay execution of the underlying decision (the final removal order), an alien can separately seek a stay of a final removal order from the IJ or BIA. *See* 8 C.F.R. §§ 1003.2(f), 1003.23(b)(1)(v). Petitioner does not state whether he has filed such a motion in his Petition. An alien can also seek a stay of removal from ICE by submitting a Form I-246, Application for a Stay of Deportation or Removal as Petitioner has done in the past. https://www.ice.gov/doclib/forms/i246.pdf (last accessed May 8, 2025).

Additionally, an alien can appeal the denial of a motion to reopen, and can seek a stay of removal, from the circuit court. The current judicial review scheme, set out at 8 U.S.C. § 1252, permits aliens to initiate judicial review of their final order of removal by filing a petition for

16

review in the judicial circuit in which their removal proceedings concluded. *See* 8 U.S.C. § 1252(a)(1) (courts of appeals have jurisdiction to review "final order[s] of removal"). Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order" of removal in a PFR. On a PFR, the courts of appeals may consider both the finding of removability and the denial of any motion. *See Reyes v. Garland*, 37 F.4th 1, 3 (1st Cir. 2022).

The statutory scheme restricts the availability and scope of judicial review of removal orders by expressly precluding habeas corpus jurisdiction and channeling review of such orders to the courts of appeals as "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute provides that review of all questions "arising from any action taken or proceeding brought to remove an alien" shall be available only through a PFR in the appropriate court of appeals. *Id.* § 1252(b)(9).

In his reply (Doc. No. 18), Petitioner also indicates he is seeking a stay of removal so he can apply for a T-visa with USCIS, but this does not change the analysis; section 1252(g) still bars jurisdiction for this Court to order a stay. *See Arely Westley a/k/a Wilson Amilcar Velasquez-Cabellero v. Harper, et al.,* No. 25-cv-229-BWA, 2025 WL 592788 (E.D. La. Feb. 24, 2025) ("*Westley*"). The petitioner in *Westley* asked the Court to stay her removal while USCIS adjudicated her T-visa application pending with USCIS. *Id.,* at *2. In rejecting the petitioner's claims, the Court held that an order staying removal until the petitioner's T-visa application is adjudicated falls outside the Court's jurisdiction under § 1252(g). *Id.* at *4. *See also Suarez-Reyes v. Williams,* No. CV-20-01222-PMX-MTL-(JFM), 2020WL 3414781, at *2

17

(D. Ariz. June 22, 2020) (petitioner's claim that he will be deprived of an opportunity to have his T-visa applications heard at a meaningful time and manner if removed is insufficient to show his due process claim is not precluded by § 1252(g)); *Marcelo Rojas v. Moore,* No. 19-cv-20855, 2019 WL 3340630, at *1 (S.D. Fla. Mar. 26, 2019) (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States); *Viera v. McAleenan,* No. 19-cv-05112-PHX-DWL-IZB, 2019 WL 4303417, at *4 (D. Ariz. Sept. 11, 2019) (petitioner alleges no facts to support contention that USCIS has a "clear nondiscretionary duty" to adjudicate a T-visa application before an applicant is removed).

Courts within this district and elsewhere also routinely held that Section 1252(g) bars jurisdiction to enter a stay of removal in other circumstances in which an individual seeks more time to apply for different forms of immigration relief. *See, e.g., Compere*, 368 F. Supp. 3d at 170 (D. Mass. 2019) (court barred from entering stay even though petitioner had application pending); *Viana*, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018); *E.L.F. v. Prim,* 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher,* No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Moreover, Petitioner has no right to a stay of removal under federal regulation, as the mere submission of an application seeking T nonimmigrant status (which has not yet occurred per Petitioner) has no effect on ICE's authority or discretion to execute a final order of removal. 8 C.F.R. § 214.204(b)(2)(i) ("The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal…."). *See also Nicholas*

*L. L. v. Barr,* No. 19-cv-02543-ECT-TNL, 2019 WL 4929795, at *5–6 (D. Minn. Oct. 7, 2019) (an alien subject to a final order of removal, deportation, or exclusion may file an application for T-1 nonimmigrant status directly with USCIS. However, the filing of an application for T nonimmigrant status has no effect on DHS' authority or discretion to execute a final order of removal, although the alien may request an administrative stay of removal pursuant to 8 C.F.R. § 241.6(a)). A stay of removal is automatically granted *only* once USCIS determines that T-visa application is *bona fide.* 8 C.F.R. § 214.204(b)(2)(iii). Petitioner makes no claim that USCIS has made a *bona fide* determination of his T-visa application and any contention that the mere filing of an application, or as here, the intention to file, runs directly contrary to the governing regulations. 8 C.F.R. § 241.204(b)(2).

Petitioner has had ample opportunity to reopen his removal order, entered in 2006, to seek stays of removal, or to apply for any other form of relief from removal for which he may be eligible. Congress, however, did not provide authority to this Court to consider such requests, and in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioner's request for a stay of removal from this Court must be denied.

## CONCLUSION

For the above reasons, Petitioner's assertion of unlawful detention in violation of statute, regulation, and the Constitution fails. As such, this Court should deny his request for release.

LEAH B. FOLEY<br>
United States Attorney

Dated: June 5, 2025          By:   */s/ Mark Sauter*
                                   Mark Sauter
                                   Assistant United States Attorney
                                   United States Attorney's Office
                                   1 Courthouse Way, Suite 9200
                                   Boston, MA 02210

Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

    I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 5, 2025      By:      */s/ Mark Sauter*
                                                  Mark Sauter
                                                  Assistant United States Attorney